Timmany v Benko (2021 NY Slip Op 03648)





Timmany v Benko


2021 NY Slip Op 03648


Decided on June 10, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:June 10, 2021

532055
[*1]Kathleen A. Timmany, Respondent,
v
Richard Benko et al., Defendants, and Michael Bishop et al., Appellants. (Action No. 1.)
Virginia Verhoff, Respondent,
v
Richard Benko et al., Defendants, and Michael Bishop et al., Appellants. (Action No. 2.)

Calendar Date:April 22, 2021

Before:Egan Jr., J.P., Lynch, Clark and Colangelo, JJ.

Hite & Beaumont, PC, Albany (John H. Beaumont of counsel), for appellants.
E. Stewart Jones Hacker Murphy, LLP, Troy (Mark R. Sonders of counsel), for Kathleen A. Timmany, respondent.
Law Office of Brian W. Devane, Delmar (Brian W. Devane of counsel), for Virginia Verhoff, respondent.



Colangelo, J.
Appeal from that part of an order of the Supreme Court (McGrath, J.), entered March 2, 2020 in Rensselaer County, which denied a motion by defendants Michael Bishop and Lori Bishop for summary judgment dismissing the complaints against them.
In May 2016, during a party hosted by defendants Lori Bishop and Michael Bishop at their home, a portion of the second-story deck collapsed causing serious injuries to plaintiffs Kathleen A. Timmany and Virginia Verhoff who were on the deck at the time of the collapse. Plaintiffs each commenced two separate personal injury actions — one against the Bishops, Equinox Construction Corporation and defendant Richard Benko, the builder and the original owner of the house who constructed the deck, respectively, and a second against defendant George Galib, who bought the property in 2002 and sold it to the Bishops in 2006. Issue was joined and, as relevant here, the Bishops asserted cross claims for indemnification and contribution against Equinox Construction and Benko. Thereafter, the actions against Equinox Construction were discontinued. The parties then agreed to consolidate Timmany's two actions (now action No. 1) and to consolidate Verhoff's two actions (now action No. 2) and these two actions were joined for the purposes of the trial. Discovery ensued, during which plaintiffs and the Bishops, among other things, retained engineers to inspect the collapsed deck and surrounding wall area and opine on the cause of the collapse and whether such cause would have been visible to the Bishops prior to the collapse. Both experts agreed that the deck collapsed due to extensive dry rot in the rim joist of the house to which the ledger board of the deck had been attached. They noted, as contributing causes of the collapse, the construction of the deck without metal flashing and the use of common nails, rather than bolts, to affix the deck to the house. The experts disagreed as to whether the rot would have been visible to the Bishops and, in particular, Michael Bishop, who performed exterior maintenance on the property and other occasional upkeep below the deck, including shortly before the May 2016 party.
The Bishops moved for summary judgment dismissing the complaints against them, contending that the record conclusively established that they lacked actual or constructive notice of the alleged defect that caused the deck's collapse. Plaintiffs opposed the motion and cross-moved for partial summary judgment on the issue of the Bishops' actual or constructive notice. Supreme Court denied the motion and cross motions.[FN1] The Bishops appeal the denial of their motion for summary judgment.
We affirm. On a motion for summary judgment, the moving party "has the burden to establish 'a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact'" (Voss v Netherlands Ins. Co., 22 NY3d 728, 734 [2014], quoting Alvarez v [*2]Prospect Hosp., 68 NY2d 320, 324 [1986]; see Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985]). "Once this showing has been made, however, the burden shifts to the party opposing the motion for summary judgment to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact which require a trial of the action" (Alvarez v Prospect Hosp., 68 NY2d at 324 [citation omitted]). As relevant here, the Bishops bore the initial burden of demonstrating that they had maintained the property in a reasonably safe condition and that they did not create or have actual or constructive notice of the specific alleged dangerous condition that resulted in plaintiffs' injuries (see Hill v Aubin, 188 AD3d 1520, 1521 [2020]; Firment v Dick's Sporting Goods, Inc., 160 AD3d 1259, 1259-1260 [2018]; Torgersen v A & F Black Cr. Realty, LLC, 158 AD3d 1042, 1042 [2018]; Kraft v Loso, 154 AD3d 1265, 1265 [2017]). "[C]onstructive notice, in contrast to actual notice, requires that the condition be visible and apparent and has existed for a sufficient period of time prior to the accident to permit a defendant to discover it and take corrective action" (Mister v Mister, 188 AD3d 1334, 1334-1335 [2020] [internal quotation marks and citations omitted]; see Hill v Aubin, 188 AD3d at 1521).
In support of their motion, the Bishops submitted, among other things, the affidavits of Michael Bishop and the Bishops' engineer, as well as the written summary of a comprehensive building inspection, denominated the "Executive Summary," that was performed for Galib, the prior owner. Michael Bishop averred that during the 10-year period since the Bishops purchased the house, he did "general maintenance work on the deck, both on the deck and underneath the deck." He contended that he "never made any observations whatsoever that indicated any concerns related to the safety or stability of the deck" and "did not observe any broken, cracked, deteriorating or decaying parts or components of the deck that appeared to need replacement or repair." The Bishops' engineer inspected the deck a few days after the collapse and reviewed photographs that were taken of the rim joist, ledger board and the house, including the concrete block wall beneath the deck. He opined that "the cause of the partial deck collapse was the development of dry rot in the rim joist to which the collapsed portion of the deck had originally been attached." The engineer opined further that "the development of dry rot in the rim joist and behind the ledger board resulted from the failure to install flashing when the deck was originally constructed, which would have prevented water from seeping into the rim joist and ultimately causing dry rot." The engineer concluded that, "[o]nce the deck was in place on the house, the rim joist would not be visible, and therefore any developing condition of dry rot would not be visible." He further concluded that "[t]he absence of flashing [*3]would not be visible to the [Bishops], since flashing, if installed, would have been covered up by the deck at the time it was attached to the house." Finally, in his opinion, the nails used to attach the ledger board to the house would not be visible. As to the Executive Summary, it contained an item to "[c]onsider . . . bolting the ledger board to the home under the slider." The Bishops' engineer opined that such item did not represent a potential safety hazard or concern to the building inspector, as it was listed under the "Maintenance Items" section, and not the "Major Items" or "Safety Items" portions of the summary.
We agree with Supreme Court that the evidence offered by the Bishops was sufficient to shift the burden to plaintiffs to establish the existence of a material issue of fact requiring a trial (see Kraft v Loso, 154 AD3d at 1266). In opposition to the Bishops' motion, plaintiffs submitted, among other things, the deposition testimony of Michael Bishop, photographs of the collapsed deck and the affidavit of an engineer retained by them. Michael Bishop testified that he stained the deck but did not do other maintenance. He further testified that he climbed a ladder to paint the top of the cinder block under the deck and used a ladder to staple an extension cord to the ledger board underneath the deck. He confirmed that "the ledger board, except for where the [rim] joist met it, was clearly visible." Plaintiffs' engineer agreed that a cause of the deck collapse was "the development of rot in the rim joist to which the collapsed portion of the deck had originally been attached." He also opined that the failure to bolt the deck to the house and the age of the deck contributed to the collapse. The affidavit of plaintiffs' engineer supports their contention that, by virtue of the Executive Summary, which Lori Bishop admitted to receiving at the closing of the purchase of the home, the Bishops had actual notice that the ledger board needed to be bolted to the home under the slider. The engineer's affidavit also supports plaintiffs' contention that the Bishops had constructive notice of the dry rot. He opined that "extensive rotting . . . would have caused the rot to bleed out from under the ledger board so as to be readily observable, visible and apparent to anyone inspecting or maintaining the deck, particularly a person facing the ledger board directly under the area where the wood rot would have inevitably appeared as it bled under the ledger board. A reasonable inspection would have revealed the rot and oozing of wood . . .. These signs of decay would have been readily observable by Michael Bishop when he was painting under and attaching [an extension cord] to the failed ledger board."
Viewing the evidence "in the light most favorable to plaintiffs as the opponents of summary judgment" (Lewis Board of Educ. of the Lansingburgh Cent. Sch. Dist., 137 AD3d 1521, 1523 [2016]), and recognizing that disagreement between experts [*4]generally presents a credibility determination to be resolved by the trier of fact (see Hill v Aubin, 188 AD3d at 1523 n 2), we find that a triable issue of fact exists as to the Bishops' actual or constructive notice of the alleged dangerous or defective condition of the deck and whether the Bishops were negligent in failing to take remedial action prior to the accident (see Jones v County of Chenango, 180 AD3d 1199, 1201 [2020]; Torgersen v A & F Black Cr. Realty, LLC, 158 AD3d at 1044; Newman v City of Glens Falls, 256 AD2d 1012, 1013-1014 [1998]) Accordingly, we find that Supreme Court properly denied the Bishops' motion for summary judgment.
Egan Jr., J.P., Lynch and Clark, JJ., concur.
ORDERED that the order is affirmed, with one bill of costs.



Footnotes

Footnote 1: Galib and Benko also moved for summary judgment dismissing the claims and cross claims against them. Supreme Court granted their motions finding, among other things, that plaintiffs failed to present evidence that the prior owners created or concealed the defective condition or retained any control over the property.