WFE Ventures, Inc. v GBD Lake Placid, LLC (2021 NY Slip Op 04683)





WFE Ventures, Inc. v GBD Lake Placid, LLC


2021 NY Slip Op 04683


Decided on August 12, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:August 12, 2021

531892
[*1]WFE Ventures, Inc., Respondent- Appellant,
v
GBD Lake Placid, LLC, Individually and Doing Business as Lake Placid Marriott Courtyard Defendant and Third- Party Plaintiff- Appellant- Respondent, Schopfer Architects LLP, Third-Party Defendant- Appellant, et al., Third-Party Defendant.

Calendar Date:May 26, 2021

Before:Egan Jr., J.P., Aarons, Pritzker, Reynolds Fitzgerald and Colangelo, JJ.

Law Office of M. Randolf Belkin, Latham (Derek L. Hayden of counsel), for defendant and third-party plaintiff-appellant-respondent.
Goldberg Segalla, LLP, Buffalo (Matthew D. Gumaer of counsel), for third-party defendant-appellant.
Flink Maswick Law PLLC, Lake Placid (Edward B. Flink of counsel), for respondent-appellant.



Colangelo, J.
Cross appeals from an order of the Supreme Court (Bruening, J.,), entered July 13, 2020 in Essex County, which, among other things, partially granted defendant's motion for summary judgment dismissing the complaint and denied plaintiff's cross motion for summary judgment.
Defendant constructed a Marriott Courtyard hotel on property in the Village of Lake Placid in Essex County. When development of the hotel began in 2004, defendant hired third-party defendant Schopfer Architects LLP to obtain site approval from the Joint Review Board of the Village of Lake Placid and the Town of North Elba (hereinafter the JRB). Defendant also retained Robert M. Sutherland to prepare a stormwater management plan for the project. Part of the site plan for the hotel included an initial grading plan that called for the construction of a boulder retaining wall around the perimeter of defendant's property. The JRB approved the site plan for the hotel in May 2005 and imposed a condition requiring defendant to obtain the JRB's written approval prior to adopting any engineering modifications or design changes, including any changes to the retaining wall. Defendant hired Bette & Cring, LLC as general contractor, which, in turn, subcontracted the site work on the project to A.P. Reale & Sons, Inc. (hereinafter Reale). Soon after construction began in June 2005, defendant requested, due to a boulder shortage, and the JRB agreed, to replace the boulder retaining wall with a gabion wall.[FN1] Construction proceeded apace, but, in early 2006, extensive rubble was discovered along the property lines of the hotel. As a result, Schopfer submitted preliminary sketches to the local inspector/code enforcement officer, James E. Morganson, to see whether the JRB would consider replacing the bulk of the gabion wall with earthen fill that would extend the slope of the land approximately 25 to 30 feet into the neighboring St. Agnes Cemetery — located to the north of defendant's property. The record does not reflect that the JRB ever approved the slope extension as a replacement for the gabion wall. Nonetheless, the slope was in fact extended, using thousands of cubic feet of fill. The hotel was completed, and a certificate of occupancy was issued in January 2007.
In the interim, and during the construction of the hotel, plaintiff acquired a nearby parcel of land upon which it built a townhouse development now called Sentinel Pines. Plaintiff's property is located on Sentinel Road to the north of defendant's property and is down gradient from the hotel property. Defendant's and plaintiff's respective properties are separated by Cemetery Road, which, traveling easterly, joins with a parcel of land owned by St. Agnes Church that runs behind the parcels owned by plaintiff and defendant. The Sentinel Pines development plan called for the construction of four buildings — A, B, C and D — each to contain multiple townhouse units. Building D, the first building to be completed, is [*2]located at the lowest point of the property.
In February 2009, the portion of the Sentinel Pines property upon which Building D is located experienced flooding and resulting damage to all three units contained within the building. Sentinel Pines flooded three more times — in August 2009, April 2011 and August 2011. Shortly after the initial flooding, plaintiff's president, Peter Coffrin, complained to the JRB and asserted that the flooding was caused by defendant's elimination of a retention pond on the St. Agnes property as part of its slope-extending solution. In the face of defendant's failure to respond to plaintiff's requests for assistance and defendant's inaction, plaintiff undertook remedial measures, including the installation of a drainage culvert and the creation of a new retention area on the St. Agnes property. It is undisputed that flooding has not since occurred.
In January 2012, plaintiff commenced this action, asserting causes of action sounding in negligence and nuisance and claiming that through the slope extension and related construction — undertaken without JRB approval — defendant wrongfully diverted surface water that resulted in flooding to Sentinel Pines. Six years of discovery followed. Defendant then commenced a third-party action against Reale and Schopfer. Reale failed to respond to the third-party complaint and a default judgment was entered against it. After answering, Schopfer moved for summary judgment dismissing the third-party complaint based upon the stormwater management exclusion contained in its contract with defendant. Schopfer also sought, alternatively, to dismiss certain damage claims asserted by plaintiff in the complaint. Defendant, in turn, moved for summary judgment dismissing plaintiff's complaint and joined in Schopfer's motion seeking dismissal of certain of plaintiff's damage claims. Plaintiff opposed both motions and cross-moved for summary judgment against defendant on the issues of liability and proximate cause.
Supreme Court found that Schopfer failed to establish that it was entitled to dismissal of the third-party complaint as a matter of law, but granted Schopfer's alternative motion to the limited extent of dismissing plaintiff's damages claim for Sentinel Pines townhouse maintenance fees. The court also denied plaintiff's cross motion, but partially granted defendant's motion for summary judgment by dismissing plaintiff's negligence claim as duplicative of its nuisance claim. Otherwise, the court found issues of fact regarding, among other things, the degree of control exercised by defendant over the project and whether defendant's actions diverted water onto plaintiff's property by artificial means, thereby precluding summary judgment in this respect. Schopfer appeals from Supreme Court's denial of its motion for summary judgment dismissing the third-party complaint or, in the alternative, the court's failure to dismiss certain categories of damages claimed by plaintiff[*3]. Defendant appeals from the court's denial of its motion for summary judgment dismissing plaintiff's complaint. Plaintiff cross-appeals from the court's denial of its cross motion for summary judgment on the issues of liability and proximate cause, the dismissal of its negligence claim and the dismissal of its claim for management fees.
As longstanding case law reflects, "[s]ummary judgment is a drastic remedy, to be granted only where the moving party has tendered sufficient evidence to demonstrate the absence of any material issues of fact and then only if, upon the moving party's meeting of this burden, the non-moving party fails to establish the existence of material issues of fact which require a trial of the action. The moving party's failure to make [such] prima facie showing . . . requires a denial of the motion, regardless of the sufficiency of the opposing papers" (Vega v Restani Constr. Corp., 18 NY3d 499, 503 [2012] [internal quotation marks, brackets, emphasis and citations omitted]; see CPLR 3212 [b]). In opposing a motion for summary judgment, "mere conclusions, expressions of hope or unsubstantiated allegations or assertions are insufficient" (Zuckerman v City of New York, 49 NY2d 557, 562 [1980]; accord Delash v Amyot, 186 AD3d 1793, 1794 [2020]). With respect to both defendant's motion for summary judgment dismissing the complaint and plaintiff's cross motion for summary judgment on the issues of liability and proximate cause, the threshold issue, put simply, is whether the genesis of the flooding of Sentinel Pines for which plaintiff seeks recompence was caused by defendant's construction or by some other phenomenon. Supreme Court correctly concluded, based in large part upon conflicting expert affidavits and testimony submitted or relied upon by the parties, that issues of fact are present that, in turn, require resolution by a jury.
Plaintiff submitted three expert affidavits, each of which supported plaintiff's contention that defendant's construction of the hotel — particularly its decision to use fill as opposed to the JRB approved use of a gabion wall — was the cause of the flooding. Kevin Hastings, a professional engineer with over 20 years of experience in site engineering design and stormwater drainage, inspected the property and concluded that there was no evidence of past surface water flow onto the Sentinel Pines property from any of its surrounding properties, and that the cause of the flooding "was the filling in of the lands behind the [hotel] without making alternate provisions for the stormwater that had historically been directed behind the property." Hastings also found that, once plaintiff constructed a new retention area, the flooding stopped. The affidavit of Peter E. Gibbs, another professional engineer who attested to having 30 years of experience, including in the area of stormwater management, reached a similar conclusion based upon several site visits and testing. Specifically, Gibbs opined [*4]that defendant's placement of large amounts of fill — which he calculated to be a volume of approximately 59,500 cubic feet — to extend the slope blocked historic drainage patterns and led to the flooding. Plaintiff also submitted the affidavit of William Kardas, a meteorologist, who opined that, based upon his evaluation of rainfall events, the floods would not have occurred had the remedial measures undertaken by plaintiff been in place prior to the flooding events.
Defendant, on the other hand, relied upon the opinion of Ivan Zdrahal, another professional engineer, who had been retained by the Town of North Elba and the Village of Lake Placid after the flooding events to inspect the drainage issues in the areas of the hotel, Sentinel Pines and the St. Agnes property. Based upon his inspection, study and analysis, Zdrahal concluded that not only did the hotel construction fail to cause the flooding, but the building of the hotel actually alleviated some surface water flow onto plaintiff's property by redirecting some surface water that had previously flowed across the Sentinel Pines property. In light of the conflicting expert opinions and "recognizing that disagreement between experts generally presents a credibility determination to be resolved by the trier of fact" (Timmany v Benko, 195 AD3d 1212, 1215 [2021]), Supreme Court correctly determined that the cause of the flooding cannot be resolved on a motion for summary judgment (see Hill v Aubin, 188 AD3d 1520, 1523 n 2 [2020]).
Defendant nonetheless argues that, regardless of whether the construction of the hotel was the root cause of the flooding of plaintiff's property, defendant bears no responsibility in this regard for two independent reasons: (1) surface water was not diverted onto plaintiff's land by artificial means, and (2) the actions undertaken on defendant's behalf were performed by its contractor, not at defendant's direction, and, therefore, defendant cannot be held vicariously liable for the contractor's conduct — however wrongful or negligent it might have been. Supreme Court rejected both of defendant's contentions, finding issues of fact regarding whether artificial means were used, as well as the extent of defendant's control over the construction project. We agree.
A landowner will not be liable for damages caused by the runoff of surface water onto a neighbor's land as long as it was the result of an improvement to the landowner's property undertaken "in a good faith effort to enhance the usefulness of the property" and, of more significance here, "no artificial means, such as pipes and drains, are used to divert the water thereon" (Baker v City of Plattsburgh, 46 AD3d 1075, 1076 [2007]; see Kossoff v Rathgeb-Walsh, 3 NY2d 583, 586 [1958]; 6 Harbour Park Dr., LLC v Town of N. Hempstead, 159 AD3d 777, 779 [2018], lv dismissed and denied 32 NY2d 1085 [2018]; 517 Union St. Assoc. LLC v Town Homes of Union Sq. LLC, 156 AD3d 1187, 1189 [2017]; Cottrell v Hermon, 170 [*5]AD2d 910, 910 [1991], lv denied 79 NY2d 853 [1991]). The first element is clearly satisfied here by the construction of a new hotel where vacant land and/or an abandoned building once stood. Defendant maintains that the second element is also satisfied because there is no evidence that pipes or drains were used or installed by defendant. We disagree. This Court has held that the definition of artificial means should not be read so narrowly, as other, more esthetically pleasing means of water diversion — such as the construction of a swale or a berm — have been held to potentially constitute artificial means sufficient to form the basis for liability (see Long v Sage Estate Homeowners Assn., Inc., 16 AD3d 963, 965 [2005], lv dismissed and denied 5 NY3d 756 [2005]). Indeed, "[t]he diversion of water by artificial means . . . is not strictly limited to the use of pipes, drains and ditches and may otherwise be established where it is demonstrated that the net effect of [the] defendant['s] improvements so changed, channeled or increased the flow of surface water onto the plaintiff['s] land as to proximately cause damage to the property" (517 Union St. Assoc. LLC v Town Homes of Union Sq. LLC, 156 AD3d at 1189 [internal quotation marks, brackets and citations omitted]; see Long v Sage Estate Homeowners Assn., Inc., 16 AD3d at 965).
Here, plaintiff has adduced expert calculations indicating that a total volume of over 59,500 cubic feet of fill was placed by defendant to extend the slope. A jury might well conclude that the use of such a volume of fill to change the natural slope of the land could be deemed an artificial, as opposed to a natural, means of water diversion. At the very least, and as Supreme Court recognized, such a significant change to the landscape raises an issue of fact as to whether defendant's actions can be characterized as artificial and thereby expose defendant to liability. In short, as with the building of a swale or a berm, the issue of whether the extended slope "so changed, channeled or increased the flow of surface water onto plaintiff's land as to proximately cause damage to the property cannot be determined on [a] motion for summary judgment" (Krossber v Cherniss, 125 AD3d 1274, 1275 [2015] [internal quotation marks, brackets and citation omitted]; see 517 Union St. Assoc. LLC v Town of Homes of Union Sq. LLC, 156 AD3d at 1191; Long v Sage Estate Homeowners Assn., Inc., 16 AD3d at 965).
Defendant also maintains that it is entitled to summary judgment on the ground that any acts that are alleged to have caused damage to plaintiff's property, albeit in defendant's name, were actually undertaken by defendant's contractors for which, under the circumstances present here, defendant is not responsible. "The general rule is that a party who retains an independent contractor, as distinguished from a mere employee or servant, is not liable for the independent contractor's negligent acts. Although several justifications [*6]have been offered in support of this rule, the most commonly accepted rationale is based on the premise that one who employs an independent contractor has no right to control the manner in which the work is to be done and, thus, the risk of loss is more sensibly placed on the contractor" (Kleeman v Rheingold, 81 NY2d 270, 273-274 [1993] [citations omitted]; see Brothers v New York State Elec & Gas Corp., 11 NY3d 251, 257-258 [2008]; Rosenberg v Equitable Life Assur. Socy. of U.S., 79 NY2d 663, 668 [1992]). Defendant contends that, inasmuch as it retained Bette & Cring and Reale as independent contractors to perform the day-to-day construction tasks, defendant is absolved from liability for the acts that may have diverted surface water onto plaintiff's property, and plaintiff should look to the subject contractors for compensation.
The evidence adduced by plaintiff at the very least raised an issue of fact regarding the degree of control and oversight exercised by defendant over the work performed, particularly with respect to the decision to use fill to affect a slope change, as opposed to approved use of a gabion wall. As Supreme Court recognized, and as the record reflects, plaintiff raised sufficient facts to demonstrate that defendant, including through its principal, David Gordon, was actively involved in the planning and the decision to adopt the slope-change solution and directed Schopfer to prepare preliminary sketches and present them to the JRB for approval — an approval that never came. Indeed, Gordon acknowledged that he was actively involved with his contractors throughout the process of planning and executing the change and that he ultimately authorized the extension of the slope.
In addition, David Schlosser, one of Schopfer's architects, testified at length that defendant, through Gordon, was a hands-on owner who worked closely with the contractors on many other project details. To be sure, contrary to defendant's suggestion and as Supreme Court implicitly recognized, the rationale underlying the rule limiting liability to a general contractor evaporates if the owner actively exercises direction and control over the contractor's work. Moreover, the determination as to whether the owner exercised control is generally a question of fact (see Harjes v Parisio, 1 AD3d 680, 680-681 [2003], lv denied 1 NY3d 508 [2004]). Thus, as plaintiff adduced sufficient evidence to raise an issue of fact as to the degree of control exercised by defendant, particularly with respect to the acts that may have led to diverting water onto plaintiff's land, defendant's motion for summary judgment on vicarious liability grounds was properly denied (see Long v Sage Estate Homeowners Assn., Inc., 16 AD3d at 966 n 2).
Turning to plaintiff's cross motion, plaintiff contends that Supreme Court erred in dismissing its negligence cause of action as duplicative of its private nuisance claim, asserting that defendant acted both negligently and intentionally [*7]in extending the slope without JRB approval and in failing to address the flooding of Sentinel Pines once it was notified that flooding had occurred. A private nuisance claim "may be established by proof of intentional action or inaction that substantially and unreasonably interferes with other people's use and enjoyment of their property" (O'Connor v Shultz, 166 AD3d 1104, 1104-1105 [2018] [internal quotation marks and citations omitted]; see DelVecchio v Collins, 178 AD3d 1336, 1336-1337 [2019]). "[S]uch a claim [is] actionable upon proof that [the] defendant['s] invasion was either intentional, negligent or reckless, or otherwise involved abnormally dangerous activities" (517 Union St. Assoc. LLC v Town Homes of Union Sq. LLC, 156 AD3d at 1191). "'An invasion of another's interest in the use and enjoyment of land is intentional when the actor (a) acts for the purpose of causing it; or (b) knows that it is resulting or is substantially certain to result from his [or her] conduct'" (O'Connor v Shultz, 166 AD3d at 1105, quoting Copart Indus. v Consolidated Edison Co. of N.Y., 41 NY2d 564, 571 [1977] [citations omitted]), "or becomes aware that the conduct is causing substantial interference and nevertheless continues it" (Cangemi v Town of E. Hampton, 374 F Supp 3d 227, 236 [ED NY 2019]).
The record reflects that, during construction of defendant's project, and in order to accommodate the hotel and amenities on the 2.53-acre site with parking areas and driveways around the building, defendant placed thousands of cubic feet of fill in an area owned by St. Agnes Church — an area that had historically allowed surface and stormwater to collect and excess water to flow behind the property acquired by defendant. The placement of the fill was contrary to the plans filed by defendant with the JRB, which first permitted only a boulder and then a gabion wall, and was done without JRB approval or updated engineering or stormwater studies. The effect of defendant's actions was to eliminate what was described as a retention pond on the cemetery land, causing the water to back up onto plaintiff's property, which, prior to the placement of fill, had never experienced flooding. Since the fill was placed, plaintiff's property flooded on four occasions, and plaintiff, after the first flood in February 2009, placed defendant on notice of the flood and the resulting damages and asked for its assistance to remedy the problem. Defendant denied responsibility for the flooding and took no remedial efforts to prevent further flooding. Although the causes of action for negligence and private nuisance arise out of the same undisputed facts, it cannot be said that the private nuisance claim arises solely out of the negligence claim. To the contrary, the facts as alleged in plaintiff's complaint and bills of particulars demonstrate a viable theory of private nuisance based upon intentional conduct, i.e., that defendant eventually knew or should have known that its [*8]actions in placing the fill caused substantial interference and nevertheless continued it (see Cangemi v Town of E. Hampton, 374 F Supp 3d at 236). We therefore find that Supreme Court erred in dismissing plaintiff's negligence cause of action.
As for Schopfer's motion for summary judgment dismissing the third-party action commenced by defendant, the contract between defendant and Schopfer reflects that Schopfer was initially required to "assist [defendant] in connection with [its] responsibility for filing documents required for the approval of governmental authorities" prior to construction. During construction, however, Schopfer undertook various responsibilities over the work, including the preparation and review of change orders, as well as to generally "provide administration of the [c]ontract for [c]onstruction" by, among other things, reviewing design alternatives with defendant, periodically visiting the job site to determine the progress of the work and generally ascertaining "if the [w]ork when completed [would] be in accordance with" the contract documents and site plans. The contract between defendant and Schopfer included an indemnification provision by which Schopfer assumed liability for property damage "to the extent caused by the negligent acts or omissions of [Schopfer]." However, the contract expressly excluded from the scope of Schopfer's responsibilities the "[d]esign and engineering of storm water management and erosion control systems." Schopfer's motion — insofar as Schopfer's potential liability to defendant for indemnification is concerned — is, in essence, predicated upon this exclusion.
To be sure, "a contractual indemnification provision 'must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed. The promise [to indemnify] should not be found unless it can be clearly implied from the language and purpose of the entire agreement and the surrounding facts and circumstances'" (Alfaro v 65 W. 13th Acquisition, LLC, 74 AD3d 1255, 1255-1256 [2010], quoting Hooper Assoc. v AGS Computers, 74 NY2d 487, 491-492 [1989] [citations omitted]). However, despite the contractual limitation, Supreme Court found that defendant had adduced sufficient facts to raise a question of fact as to whether Schopfer acted negligently in connection with its contract administration duties, leaving extant the issue of whether Schopfer would be obligated to indemnify defendant. We agree.
Despite the exculpatory language of the contract, Schopfer, among other things, insinuated itself into the stormwater management aspect of the hotel project by preparing preliminary drawings reflecting the change from the use of a gabion wall to the proposed slope extension, and submitted copies of the drawings to the Town inspector/code enforcement officer, Morganson, with the request that he review the proposed change with the JRB and "advise as to its acceptability." Schopfer was thereafter in frequent [*9]contact with both Morganson and Gordon, defendant's principal, with respect to the proposed change from the gabion wall to the slope extension. Thereafter, however, Schopfer apparently lost interest in the slope issue and project; neither Schopfer nor any employee thereof subsequently inspected the parts of the property where the gabion wall was to be located and where the slope was ultimately extended. Despite this lack of interaction, Schopfer certified the construction as substantially complete in April 2007 — even though it was apparently not in conformity with the JRB approved plans because the JRB never formally approved the slope change. Indeed, Schopfer was unaware that the slope had been extended until well after the hotel project had been completed when, in March 2009, Schopfer was informed of the first flooding event at Sentinel Pines. Issues of fact as to Schopfer's potential liability are thus clearly present. Whether Schopfer's actions — or failures to act — can be characterized as negligent conduct that, in turn, caused damage to defendant so as to trigger the indemnification clause of the underlying contract is, as Supreme Court held, up to a jury to determine (see Padovano v Costco Wholesale Corp., 28 AD3d 729, 730 [2006]).
Next, both Schopfer and defendant contend that Supreme Court erred in failing to dismiss plaintiff's claims for damages incurred as a result of the flooding, including lost profits and diminution of value in the amount of $551,250 and carrying costs in the amount of $781,443. "[T]he purpose of awarding damages in a tort action is to make the plaintiff whole, and, when a plaintiff seeks to recover damages for an injury to property, the proper measure of damages is typically the lesser of the cost to repair or the diminution of market value" (Pittsford Canalside Props. LLC v Pittsford Vil. Green, 154 AD3d 1303, 1304 [2017] [internal quotation marks and citations omitted]). "The damages cannot be remote, contingent or speculative. They need not be immediate, but need to be so near to the cause only that they may be reasonably traced to the event" (E.J. Brooks Co. v Cambridge Sec. Seals, 31 NY3d 441, 448-449 [2018] [internal quotation marks and citation omitted]).
Although Schopfer and defendant contend that plaintiff's damages for diminution in property value and carrying costs are purely speculative and improper, the testimony of Coffrin, plaintiff's president, and the sworn affidavit of Wayne Feinberg, a licensed New York real estate appraiser and broker, belie that contention. According to Coffrin, plaintiff was bound to disclose the flooding to potential buyers, which "turned people away" from purchasing a unit on the property, thereby establishing a claim for the diminution of value of the property. Feinberg confirmed plaintiff's evaluation of said damages and affirmed Coffrin's testimony by noting that Sentinel Pines units fell "out of favor due to the flood incidences," thereby lending support [*10]to both the claims for carrying costs, as well as the claims for the decrease in property values and the lost profits that necessarily flow therefrom.
Plaintiff also contends that Supreme Court erred in dismissing its claim for property management fees. We agree. Although Supreme Court correctly observed that plaintiff "would have incurred management fees regardless of the flooding," the record reveals that, as a result of the flooding, plaintiff may well have been required to pay for property management services for a longer period of time and in an amount greater than initially anticipated. Further, as both Coffrin and Feinberg opined, the units have failed to sell largely due to potential buyers' trepidation about the flooding incidents, thus showing a link between the flooding and increased management fees incurred. Plaintiff may therefore properly seek to prove as an element of its damages claim that greater than anticipated management costs were incurred and that such costs were attributable to the flooding incidents. Thus, neither Schopfer nor defendant have conclusively established that any of plaintiff's claimed damages are wholly speculative and unrelated to the flooding.
Supreme Court also properly denied defendant's attempt to invoke the voluntary payment doctrine to limit plaintiff's recovery for property damage to, in part, a townhouse unit or units that plaintiff sold prior to the flooding. "The common-law voluntary payment doctrine bars the recovery of payments that are 'voluntarily made with full knowledge of the facts, and in the absence of fraud or mistake of material fact or law'" (U.S. Bank, N.A. v Cordero, 191 AD3d 490, 491 [2021], quoting Dillon v U-A Columbia Cablevision of Westchester, 100 NY2d 525, 526 [2003]). The doctrine, which is limited to situations in which the parties have a preexisting contractual or quasi-contractual relationship, essentially prevents the paying party from thereafter changing his or her mind by seeking to recoup that payment voluntarily made under those circumstances (see generally Dillon v U-A Columbia Cablevision of Westchester, 100 NY2d at 526; Jenoure v Body Solutions Plus, LLC of Westbury, 29 Misc 3d 84, 86 [App Term, 2d Dept 2010]). That situation is clearly not present here. Plaintiff and defendant did not have a preexisting contractual relationship, and, at the time that payments by plaintiff were made to a third party for such repairs, plaintiff lacked full knowledge of the facts, including the ultimate cause of the flooding.[FN2] Moreover, plaintiff is certainly entitled to seek compensation for repairs necessary to protect its interest in the property that it retained, as well as to its reputation — issues that Supreme Court properly held will be addressed at trial.
Plaintiff also seeks costs and counsel fees from defendant pursuant to 22 NYCRR 130-1.1 for engaging in what plaintiff characterizes as "frivolous conduct" during the course of this litigation. "The court, in [*11]its discretion, may award to any party or attorney in any civil action . . . before the court, except where prohibited by law, costs in the form of reimbursement for actual expenses reasonably incurred and reasonable attorney's fees, resulting from frivolous conduct" (22 NYCRR 130-1.1 [a]). "[C]onduct is frivolous if: (1) it is completely without merit in law and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law; (2) it is undertaken primarily to delay or prolong the resolution of the litigation, or to harass or maliciously injure another; or (3) it asserts material factual statements that are false" (22 NYCRR 130-1.1 [c]). As the rule makes plain, the determination of whether the party or attorney engaged in frivolous conduct, and the type and degree of costs or fees to impose, is a determination to be made by the court alone — not by a jury. The record does not reflect that Supreme Court has made any determination as to whether defendant engaged in frivolous conduct and, therefore, such determination must be made by Supreme Court upon remittal.
We have reviewed the parties' remaining contentions and find them to be without merit.
Egan Jr., J.P., Pritzker and Reynolds Fitzgerald, JJ., concur.
Aarons, J. (concurring in part and dissenting in part).
I disagree with only that part of the majority's determination to remit the matter for Supreme Court to determine whether sanctions should be imposed upon defendant under 22 NYCRR 130-1.1. Accordingly, to that limited extent, I respectfully dissent.
Sanctions in the form of costs and counsel fees may be awarded as a consequence of frivolous conduct by a party or counsel (see 22 NYCRR 130-1.1 [a]). A party seeking sanctions for alleged frivolous conduct can do so upon a "motion in compliance with CPLR 2214 or 2215" (22 NYCRR 130-1.1 [d]). In its notice of cross motion, plaintiff sought partial summary judgment on the issues of liability and proximate cause but did not formally or expressly seek sanctions under 22 NYCRR 130-1.1 (compare Household Bank Region I v Stickles, 276 AD2d 940 941 [2000]). Although the notice of cross motion did state that plaintiff sought alternative relief, "including [counsel] fees and costs and disbursements," in the absence of any citation in connection therewith, it is unclear whether this relief was being sought under 22 NYCRR 130-1.1, CPLR 8106 or CPLR 8303-a.
I note that strict compliance with CPLR 2214 or 2215 is not fatal so long as "the party or attorney to be sanctioned [is] afforded a reasonable opportunity to be heard on the matter" (Household Fin. Corp. III v Dynan, 274 AD2d 656, 656 [2000]). The attorney affirmation in support of plaintiff's cross motion, however, does not set forth any alleged frivolous conduct undertaken by defendant or its counsel during the litigation so as to give notice that sanctions under 22 NYCRR 130-1.1 were being sought. Plaintiff ultimately refers to "Part 130 of [*12]the Uniform Court Rules" but does so in its reply papers in further support of its cross motion. Such circumstance does not give defendant reasonable notice of plaintiff's intent to seek sanctions under 22 NYCRR 130-1.1 (see id.). Moreover, even if proper, plaintiff's reference to "Part 130" in its reply was to illustrate that counsel fees were recoverable as a form of damages. In this regard, plaintiff urged Supreme Court to deny the motion by third-party defendant Schopfer Architects LLP to dismiss plaintiff's damages claim because "[counsel] fees . . . are appropriate under Part 130 of the Uniform Court Rules and also as exemplary damages which we believe the proof has established would be proper. Those issues are entitled to a full and complete hearing that is not possible on a motion for summary judgment." As such, plaintiff's reply papers do not indicate that the reference to "Part 130" therein was related to a request for sanctions for alleged frivolous conduct by defendant or its counsel.
This is not to say that plaintiff is wholly foreclosed from seeking sanctions under 22 NYCRR 130-1.1. Plaintiff may formally seek such relief prior to or during trial, or Supreme Court, upon adequate notice, may deem it necessary to entertain the issue of sanctions for frivolous conduct after trial. Indeed, in its reply brief, plaintiff notes that "once the egregiousness of [defendant's] conduct is demonstrated at trial, the issues of sanctionable conduct and/or [counsel] fees will be ripe for the [t]rial [c]ourt." There is no need, however, for the court to make an initial determination at this juncture as to whether sanctions are warranted where plaintiff did not request them as part of its cross motion for summary judgment and the record fails to disclose that defendant had sufficient notice that sanctions were being sought against it. Consequently, in my view, remittal is unnecessary.
ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as (1) granted defendant's motion for summary judgment dismissing plaintiff's negligence cause of action and (2) granted motions by defendant and third-party defendant Schopfer Architects LLP for dismissal of plaintiff's claim for management fees; said motions denied to that extent and matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.



Footnotes

Footnote 1: A gabion wall is a retaining wall built by stacking stone-filled cages together with wire.

Footnote 2: At best, defendant appears to be asserting that plaintiff lacks standing to recover costs incurred in repairing a townhouse unit that it sold prior to the flooding of Sentinel Pines. However, defendant waived that defense, which may explain its procrustean effort to invoke the voluntary payment doctrine, by neglecting to assert it in its answer or by a pre-answer motion. "It is essential, however, that a party raise the legal argument of lack of standing to sue in its answer to a complaint or in a pre[-]answer motion to dismiss. The failure to do so is fatal in that it constitutes a waiver of this argument at all subsequent phases of the litigation" (Gilman v Abagnale, 235 AD2d 989, 990 [1997] [citations omitted]).