Maloney v Night Castle Mgt.
2026 NY Slip Op 02901
May 7, 2026
Appellate Division, Third Department
Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.
This decision is uncorrected and subject to revision before publication in the Official Reports.

Jerry Maloney, Respondent,
v
Night Castle Management, Respondent- Appellant, et al., Defendant, and Ver, Defendant and Third-Party Plaintiff- Respondent, and American Young Voices, LLC, Defendant and Third-Party Plaintiff-Respondent-Appellant; SMG, Third-Party Defendant-Appellant- Respondent.

Decided and Entered:May 7, 2026
CV-24-1776
Calendar Date: March 26, 2026
Before: Aarons, J.P., Pritzker, Reynolds Fitzgerald, Fisher And Mcshan, JJ.

Goldberg Segalla, Albany (Jonathan M. Bernstein of counsel), for third-party defendant-appellant-respondent.
Finkelstein & Partners, LLP, Newburgh (George A. Kohl 2nd of counsel), for respondent.
Monaco Cooper Lamme & Carr, PLLC, Albany (Mackenzie E. Kesterke of counsel), for respondent-appellant, and defendant and third-party plaintiff-respondent-appellant.
Ahmuty, Demers & McManus, Albertson (Frank J. Wenick of counsel), for defendant and third-party plaintiff-respondent.

[*1]
Fisher, J.
Cross-appeals from an order of the Supreme Court (Richard McNally Jr., J.), entered October 11, 2024 in Rensselaer County, which denied various motions for summary judgment.
In 2017, defendants Night Castle Management and American Young Voices, LLC (hereinafter collectively referred to as AYV) organized a children's concert at what was then known as the Times Union Center (hereinafter the venue) in the City of Albany. In order to produce this show, AYV rented concert equipment from defendant VER, which was loaded by VER from its warehouse onto a tractor trailer owned by defendant Lyons Gate Group Corp. (hereinafter Lyons). The truck driver employed by Lyons then delivered the equipment to the venue, where it was unloaded by union workers supplied by the venue manager, third-party defendant SMG. Plaintiff was one of those union workers, and he was injured when a 70-80-pound lighting truss fell onto his lower leg.
Plaintiff commenced this personal injury action against AYV, Lyons and VER, alleging that they were negligent in, among other things, failing to properly load the tractor trailer by not securing the lighting truss and failing to adequately supervise the delivery and unloading of equipment. Relevant here, AYV asserted cross-claims against VER for contractual indemnification, and then AYV and VER filed third-party complaints against SMG, both asserting causes of action for contractual indemnification, common-law indemnification and breach of contract. VER additionally asserted a cause of action for failure to procure insurance against SMG. In turn, SMG asserted counterclaims against AYV and VER for contractual and common-law indemnification. Following the completion of disclosure, SMG moved for summary judgment dismissing the third-party complaints of AYV and VER. Likewise, AYV moved for summary judgment seeking dismissal of the claims asserted by plaintiff and each defendant. SMG opposed and cross-moved for an order seeking, among other things, a conditional order of indemnification. Supreme Court denied the motions, determining, among other things, that each movant failed to demonstrate the absence of triable issues of fact regarding the claims of negligence asserted against them. SMG and AYV appeal.
There are two forms of challenges in each appeal, one relating to the scope of the indemnification provisions and the other related to whether coverage has been triggered. Nonetheless, we begin by recognizing that summary judgment can only be granted "if the movant tenders sufficient evidence to demonstrate the absence of any material issues of fact and, once this prima facie showing is made, the non-movant fails to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact which require a trial of the action" (Flanders v Goodfellow, 44 NY3d 57, 63 [2025] [internal quotation marks, brackets and citation omitted]). In doing so, "we view the facts in the light most favorable to the nonmoving [*2]party" (Golobe v Mielnicki, 44 NY3d 86, 92 [2025]). "When deciding a motion for summary judgment, the function of the court is not to make credibility determinations or findings of fact, but rather to identify material triable issues of fact" (Smith v Zama, 244 AD3d 1692, 1694 [3d Dept 2025] [internal quotation marks and citations omitted]).
Turning first to the scope of each indemnification provision, whether a party is entitled to contractual indemnification turns on "the specific language of the contract, and the promise to indemnify should not be found unless it can be clearly implied from the language and purpose of the entire agreement and the surrounding facts and circumstances" (Zong Wang Yang v City of New York, 207 AD3d 791, 796 [2d Dept 2022] [internal quotation marks, brackets and citation omitted]; see Guthorn v Village of Saranac Lake, 169 AD3d 1298, 1300 [3d Dept 2019]). In conducting our review, we construe unambiguous indemnification provisions in accord with the parties' intent as revealed by the plain language of the agreement (see Dibrino v Rockefeller Ctr. North, Inc., ___ NY3d ___, ___, 2025 NY Slip Op 07077, *2 [2025]). In doing so, we must remain mindful "that[,] when a party is under no legal duty to indemnify, a contract assuming that obligation must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed" (Tonking v Port Auth. of N.Y. & N.J., 3 NY3d 486, 490 [2004] [internal quotation marks, brackets and citation omitted]; see Lammon v Bayberry Sq., LLC, 200 AD3d 1170, 1171-1172 [3d Dept 2021]; Burhmaster v CRM Rental Mgt., Inc., 166 AD3d 1130, 1134 [3d Dept 2018]).
There are three agreements relevant to the issues raised on appeal. First, the venue use license agreement between SMG and AYV (hereinafter the license agreement) provided under section 2 (b) that AYV is liable for all losses occurring at the venue due to the negligent acts of its employees or subcontractors, except to the extent caused by the negligence of SMG. Under section 10, which references such losses under section 2 (b), each party agreed to indemnify the other party from all losses arising from bodily injury to another person caused by the negligent acts, errors and/or omissions of such party or their subcontractors. Notably, each party's indemnification obligation extended to the other party's "respective officers, directors, agents, and employees" and, in the case of SMG, to the "subcontractors" of AYV. Second, the agreement for the rental of equipment and services between AYV and VER (hereinafter the rental agreement) provided, in the pertinent part, that VER would provide personnel to assist with the set-up and operation of the equipment who were to act "under the direct supervision and control" of AYV and AYV's managers. In doing so, AYV was "solely responsible for providing such supervision and control as will protect . . . third parties from injury or loss," and VER would only be liable for the willful [*3]conduct or gross negligence of its personnel. In addition, the rental agreement contained a separate indemnification provision, whereby each party agreed to hold harmless and indemnify the other party for any injuries or damages arising out of the rental and caused "in any manner" except for the "negligence and willful misconduct of the party at fault." Third and lastly, the stage employees contract between the venue and SMG provided that the union workers were at the "direction and control" of SMG.
We find these provisions to be unambiguous when viewed in the totality of the agreement and the surrounding facts and circumstances related to the event. Although VER was not a party to the license agreement, it is clear that SMG agreed to indemnify both AYV and its "subcontractors" in the event that SMG's negligence caused a loss. Furthermore, contrary to AYV's interpretation, AYV could be responsible under the license agreement for losses sustained by SMG due to the negligence of its agents or subcontractors arising out of the rental of equipment. The scope of AYV's obligation extends beyond the conduct of VER's personnel in setting up and operating the rented equipment at the venue, but also for "any and all losses" sustained by SMG due to the negligence of VER through sections 2 (b) and 10 of the license agreement — which would include the loading of the tractor trailer by VER from its warehouse (see Emerson v KPH Healthcare Servs., Inc., 203 AD3d 1272, 1274 [3d Dept 2022]).
Turning next to whether the indemnification provisions were triggered so as to afford coverage, the "party seeking contractual indemnification must prove itself free from negligence, because to the extent its negligence contributed to the accident, it cannot be indemnified" (Fedrich v Granite Bldg. 2, LLC, 165 AD3d 754, 756 [2d Dept 2018] [internal quotation marks and citation omitted]; see WFE Ventures, Inc. v GBD Lake Placid, LLC, 197 AD3d 824, 834 [3d Dept 2021]; Lue v Finkelstein & Partners, LLP, 94 AD3d 1386, 1389 [3d Dept 2012]). Similarly, "to establish a claim for common-law indemnification, a party must prove not only that it was not negligent, but also that the proposed indemnitor was responsible for negligence that contributed to the accident or, in the absence of any negligence, had the authority to direct, supervise, and control the work giving rise to the injury" (Synysta v 450 Partners, LLC, 244 AD3d 1016, 1017-1018 [2d Dept 2025] [internal quotation marks, brackets, ellipsis and citation omitted]; see Nusbaum v 1455 Wash. Ave., LLC., 240 AD3d 1113, 1115-1116 [3d Dept 2025]; Morin v Heritage Bldrs. Group, LLC, 211 AD3d 1138, 1143 [3d Dept 2022]). Although "a court may render a conditional judgment on the issue of indemnity pending determination of the primary action in order that the indemnitee may obtain the earliest possible determination as to the extent to which he or she may expect to be reimbursed, where issues of fact exist concerning the indemnitee's active [*4]negligence, even a conditional judgment has been found premature" (State of New York v Travelers Prop. Cas. Ins. Co., 280 AD2d 756, 757-758 [3d Dept 2001] [internal quotation marks, brackets and citations omitted]; see Harnden v Lentzos, 169 AD3d 1228, 1229-1230 [3d Dept 2019]).
In support of their motions, SMG and AYV primarily relied upon deposition testimony. Plaintiff testified that tractor trailers are typically loaded in sections, which are divided by straps or load bars connected to each side of the trailer. He explained that lighting trusses are typically restrained or strapped down. On the date of the incident, he and three other union workers unloaded double-stacked "box cases" from the first two sections of the trailer without encountering any loose equipment. When they came to the third section, plaintiff testified that they removed the straps and load bars to find a row of wardrobe cases that were seven feet tall, three feet wide, and on wheels that could lock. According to plaintiff, when he and another union worker started to pull one case out, the other three cases started to roll toward the back of the trailer — even though they had not unlocked the wheels yet. Plaintiff ran over to one side of the trailer to put his body in front of two wardrobe cases to stop them from rolling off the truck and started yelling for more people to come over and help. While he was holding the wardrobe cases, plaintiff testified that other cases in the trailer were still rolling forward and hitting the backs of the cases he had stopped. He testified that this continued for approximately two to three minutes before a lighting truss fell over the top of the cases and struck his foot. Plaintiff testified that he could not see over the wardrobe cases and did not see the lighting truss before it hit him, but believed the truss had not been strapped down by "[w]hoever loaded the truck."
It was undisputed that VER loaded the tractor trailer with the equipment at their warehouse. According to the testimony of VER's former asset manager, although the truck driver would be "active" in the loading process, VER employees would ultimately be responsible for loading the trailer and would "make sure that we strapped everything in" and locked the wheels on cases to avoid them from sliding while the truck was unloaded. The truck driver from Lyons confirmed that VER personnel loaded his tractor trailer and then traveled separately to the venue. The truck driver testified that he observed VER personnel unloading the trailer alongside the union workers at the time of the incident. He described the process as "look[ing] unsafe" because unloaders were rushing, snatching things and going in and out of the trailer. He testified that the "tour manager" was also "involved" in the unloading process, which included having his people go inside of the trailer to get specific things that he wanted. It was the truck driver's further understanding that the unloading crew was to listen [*5]to the tour management company, yet he believed the tour manager "had no concern for the safety of . . . the operation." The production manager for AYV testified that he had "an organizing role" in the unloading process by directing "what goes where once it comes out of the trucks." He explained that the venue had a "dedicated truck-loading team," and that neither he nor his team were allowed to work in the trucks. According to the production manager, while AYV had some oversight and supervision of the trucks once they arrived at the venue, the truck driver would typically oversee the unloading of the trucks and the union workers.
The testimony of the union stage manager confirmed that the truck driver was responsible for the unloading of the truck and that the union workers would start to unload once the "stage manager" from the tour told them to begin. Although he testified that the truck driver would typically direct the unloading process, someone from VER could have been supervising the unloading, and that someone from either AYV or VER could have gone into the trailer to request certain cases — but the union workers do the actual unloading. Notably, the union stage manager was the only individual to view a surveillance video of the incident before it was destroyed. He explained that the video did not show the top of the wardrobe cases or anything on top of them before the incident, but there was a non-union worker in the trailer at the time of the incident whom he believed was the truck driver — but he could not rule out that it might have been someone from the "road crew." He further testified that lighting trusses like the one that hit plaintiff are "never usually loose like that" or stacked high. There was also testimony from the operations manager at SMG who authored the incident report annexed to the motion papers. Although he did not recall many of the details from the day of the incident or drafting the incident report, he confirmed that he recorded the unsafe act leading to the incident as there being "[no] spotter" and that the unsafe condition was "tour equipment not strapped or secure."
Based on the foregoing, we cannot say that either movant demonstrated the absence of any triable issues of fact or credibility relating to their negligence so as to be entitled to indemnification. As to SMG, its contract with the union provided that union workers were subject to SMG's direction and control, and SMG's own accident report attributes the cause of plaintiff's injury, in part, to the absence of a spotter. Contrary to SMG's contentions, the absence of a spotter is relevant because, although the surveillance video that SMG reviewed did not show the lighting truss before it fell and plaintiff testified that he could not see the lighting truss while he was then braced against the seven-foot-tall wardrobe cases, it is an issue of fact whether an appropriately placed spotter would have been able to see the lighting truss before it fell. When [*6]further considering that plaintiff testified that he remained braced for two to three minutes before the lighting truss fell, there is also an issue of fact whether the use of a spotter would have improved the response time by others to prevent the other objects — including the lighting truss — from continuing to slide toward the back of the trailer and into the cases held by plaintiff. Accordingly, Supreme Court properly denied the branches of SMG's motion seeking summary judgment on its claims for contractual indemnification, common-law indemnification and a conditional order of indemnification (see Wellington v Christa Constr., LLC, 161 AD3d 1278, 1283 [3d Dept 2018]; State of New York v Travelers Property Cas. Ins. Co., 280 AD2d at 758).
As to AYV, the record demonstrates that they were obligated to indemnify SMG for the negligence of VER under the license agreement, and it was clear that only VER had loaded the tractor trailer at its warehouse. It was undisputed — including by VER's former asset manager — that lighting trusses had to be secured when transported in a tractor trailer, and multiple witnesses and the incident report indicated that the lighting truss that struck plaintiff had not been properly secured. As AYV contend on appeal that it was VER's "duty" to load the truck in a "safe and secure manner," the license agreement shifted responsibility for this failure back to AYV. In challenging whether it had the requisite control and supervision to establish its common-law indemnification claim (see Morin v Heritage Bldrs. Group, LLC, 211 AD3d at 1143), AYV highlights testimony that its staff and personnel from VER were not permitted into the trailer. However, the union stage manager for SMG testified otherwise, and other witnesses testified that representatives from AYV and VER had nonetheless been in the trailer unloading certain objects — including at the production manager's direction. Even though the production manager testified that he did not see anyone from AYV or VER in the trailer, he also testified that he had only gone to the loading dock twice before the incident, further calling into question his level of supervision of VER's personnel as required by the rental agreement. This is significant because, viewing the competing testimonies in the light most favorable to the nonmovants and accepting that VER personnel were indeed going into the trailer to unload specific items, the production manager's acknowledgement that only union workers were allowed to go into the trailer raises the question of whether the level of control and supervision of VER personnel that he exercised met what was required of AYV under the rental agreement. To the further extent that AYV claims that the truck driver could not definitively identify its production manager as the individual who was allegedly directing and failing to properly supervise the unloading process, which we find attenuated when considered in the context of the truck driver's and [*7]other witnesses' testimony, this is precisely the lack of clarity that precludes summary judgment. Accordingly, AYV was also not entitled to summary judgment, and Supreme Court properly denied AYV's motion in its entirety (see Nusbaum v 1455 Wash. Ave., LLC, 240 AD3d at 1116-1117; WFE Ventures, Inc. v GBD Lake Placid, LLC, 197 AD3d at 833-834).
We do, however, agree with SMG that, as the record fails to demonstrate that plaintiff sustained a "grave injury," the common-law indemnification claims asserted against SMG should have been dismissed (Workers' Compensation Law § 11 [1] [internal quotation marks omitted]; see New York Hosp. Med. Ctr. of Queens v Microtech Contr. Corp., 22 NY3d 501, 510 [2014]; Barclay v Techno-Design, Inc., 125 AD3d 1168, 1170 [3d Dept 2015]). SMG was also entitled to summary judgment on the counterclaim alleging that it failed to procure insurance, as it met its moving burden establishing that it was not obliged to do so and VER did not submit opposition to raise a question of fact on this issue (see Pantaleo v Bellerose Senior Hous. Dev. Fund Co., Inc., 147 AD3d 777, 778-779 [2d Dept 2017]; Hussey v Leggio Agency, 299 AD2d 690, 691 [3d Dept 2002]). We have examined the parties' remaining contentions and have found them to be without merit, academic or not properly before us.
Aarons, J.P., Pritzker, Reynolds Fitzgerald and McShan, JJ., concur.
ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as denied third-party defendant SMG's motion for summary judgment dismissing the third-party complaints insofar as they asserted causes of action against it based on common-law indemnification and failure to procure insurance; motion granted to that extent and said claims dismissed; and, as so modified, affirmed.